Filed 6/27/22 (see concurring opinion)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GARRETT THEROLF,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF MADERA COUNTY,<br><br>    Respondent;<br><br>MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES/CHILD WELFARE SERVICES,<br><br>    Real Party in Interest. | F083561<br><br>(Super. Ct. No. MJP018758)<br><br><br>**OPINION** |

ORIGINAL PROCEEDINGS; in mandate. Thomas L. Bender, Judge.

University of California at Irvine School of Law, Susan E. Seager and Jack Lerner for Petitioner.

No appearance for Respondent.

Regina A. Garza, County Counsel, and Christopher B. Dorian, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

**SEE CONCURRING OPINION**

Under Welfare and Institutions Code section 827, subdivision (a)(2)[1] (hereafter section 827(a)(2) or § 827(a)(2)), the juvenile court is required to release to the public the "juvenile case files … that pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300" unless the juvenile court finds, by a preponderance of the evidence, that release of the files would be detrimental to "another child who is directly or indirectly connected to the juvenile case that is the subject of the petition." (§ 827(a)(2)(A).) To obtain a deceased child's juvenile case files, a petition must be filed and interested parties afforded an opportunity to file objections. (*Ibid.*) If objections are filed, the juvenile court "shall set the matter for hearing" and thereafter "render its decision" based on the petition, any objections, any reply, and the argument at the hearing. (§ 827(a)(2)(F).)

Petitioner Garrett Therolf, a journalist, petitioned to obtain the juvenile case file of a deceased child, Mariah F., whose adoptive mother was convicted of her torture and murder. Although the Madera County Department of Social Services/Child Welfare Services (department) filed an objection to the disclosure of Mariah's juvenile case file, the juvenile court denied Therolf's petition before the time to file a reply had expired and without holding a hearing, finding release of the file would be detrimental to another child directly or indirectly connected to Mariah's case.

Therolf seeks a writ of mandate or prohibition to compel the juvenile court to vacate its order denying the petition. He contends the juvenile court erred when it issued the order denying his petition without allowing him time to file a reply brief and without holding a hearing. While the department concedes these errors, it argues they are harmless because Mariah was not within the juvenile court's jurisdiction when she died, as she was not the subject of a current dependency case and no jurisdictional finding had been made with respect to her.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

We agree the juvenile court erred when it did not allow Therolf time to file a reply to the department's objection and failed to hold a hearing on his petition. We reject the department's contention that Mariah was not within the juvenile court's jurisdiction when she died and concur with the decision in *In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1538–1539, 1556 (*Elijah S.*), which held the juvenile court has exclusive authority to order release of a deceased child's juvenile records regardless of whether a dependency petition has been filed and a prior jurisdictional finding has been made. The juvenile court prejudicially erred when it failed to require the department to produce the full scope of documents as set forth in *Elijah S.* We also reject Therolf's contention that, contrary to our decision in *Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 831–834 (*Pack*), the juvenile court was required to make specific factual findings when making a detriment finding. But we find the juvenile court's failure to comply with the other procedures set forth in *Pack* concerning in camera review of the records and preserving those records for appellate review, also was prejudicial. We conclude the failure to hold a hearing was prejudicial, especially in light of the juvenile court's failure to comply with *Elijah S.* and the *Pack* procedures, as we were deprived of an adequate record to review the juvenile court's order.

Accordingly, we grant the petition for writ of mandate and direct the juvenile court to vacate its orders, hold a hearing on Therolf's petition after ordering the department to produce Mariah's juvenile case file in accordance with *Elijah S.*, review the responsive documents in camera, and reconsider the petition applying the appropriate standards.

**FACTUAL AND PROCEDURAL BACKGROUND**

In February 2020, Amy C. was convicted of the torture and October 2014 murder of her 12-year-old daughter, Mariah, and the torture of her then 14-year-old son, C.F. Amy adopted the children after being a foster mother to them; the adoption became final in February 2014. According to a 2020 newspaper account of the case, the department removed the "remaining children" from the home in March 2015, and before Mariah's

3.

death, numerous calls and several written reports had been made to the department expressing concerns about her condition.

On June 25, 2021, journalist Garrett Therolf filed a request for disclosure of Mariah's juvenile case file under section 827(a)(2) using mandatory Judicial Council form JV-570.[2] On the form, he indicated item 4b, which states, "I believe the child … died as a result of abuse or neglect," applied, and listed an approximate date of death as October 14, 2014. Where the form provided a space to explain why he needed the records, Therolf wrote that he did not need to provide a reason for seeking Mariah's juvenile case file because the petition was filed under section 827(a)(2).

Therolf requested Mariah's "entire 'juvenile case file,' including records filed in juvenile court and related records created by county agencies to investigate suspected child abuse/neglect that were not filed in court, including records where no petition was filed in court, including records of child abuse hotline calls, and 911 calls and social worker notes, emails, and reports," citing section 827(a)(2), California Rules of Court, rule 5.552,[3] and *Elijah S., supra*, 125 Cal.App.4th at page 1552. In an attachment, Therolf asserted that based on these authorities, the term "juvenile case file" consists of a wide variety of records, including both juvenile court records and documents outside the court file. Therolf requested the disclosure of 23 categories of documents, which he asserted he was entitled to even if no juvenile dependency petition had been filed.[4]

---

[2] Further references to forms are to Judicial Council forms unless otherwise indicated.

In his writ petition, Therolf states he is a journalist associated with the Investigative Reporting Program at the University of California, Berkeley, where he reports on issues related to California's child welfare system, and over the past 15 years he has filed over 40 requests to unseal the juvenile case files of deceased children pursuant to section 827(a)(2), all of which were granted. Therolf asserts he filed the instant request "as part of his ongoing effort to promote public scrutiny and informed public debate regarding the circumstances surrounding the death of Mariah and to promote reform to prevent future child deaths by abuse and neglect."

[3] Further references to rules are to the California Rules of Court unless otherwise indicated.

[4] Therolf requested the following documents relating to Mariah: (1) all documents filed in the juvenile court case; (2) reports to the court by probation officers, department social workers,

4.

The department filed an objection to release of the juvenile case on September 20, 2021.[5] The department asserted no responsive documents existed because Mariah was not subject to the juvenile court's jurisdiction when she died, as required by section 827(a)(2), and while her death led to a referral that resulted in the removal of her siblings in October 2014, she died before those juvenile dependency proceedings commenced. The department argued the *Elijah S.* case Therolf relied on for the

---

and Court Appointed Special Advocate (CASA) volunteers; (3) documents made available to probation officers, department social workers, and CASA volunteers in preparation of reports to the court; (4) documents concerning a child for whom a petition has been filed in juvenile court that are maintained in the office files of probation officers, department social workers, and CASA volunteers; (5) transcripts, records, or reports related to matters prepared or released by the court, probation department, or child welfare services program; (6) documents, video or audio tapes, photographs, and exhibits admitted into evidence at juvenile court hearings; (7) law enforcement reports; (8) reports or written statements by social workers, probation officers, child protective service investigators, and public agency personnel involved in investigating a suspected case of neglect or abuse; (9) audio recordings or transcripts of 911 calls to police or other emergency services agencies, including the dates and times of the calls; (10) audio recordings or transcripts of calls to the county child abuse hotline, including the dates and times of the calls, and the identities of the child hotline call workers; (11) notes, summaries, and narratives child abuse hotline workers memorializing the child abuse hotline calls, "including the 'screener narrative' and references to caregivers"; (12) child abuse hotline workers' recommended responses to the child abuse hotline calls, including response deadlines; (13) records of any response to the child abuse hotline call that the child abuse hotline supervisor approved, including the final designation to screen in or out; (14) records the child abuse hotline call workers or other county workers forwarded to the emergency response child maltreatment investigator after the child abuse hotline calls; (15) emails between child abuse hotline workers, emergency services agencies, law enforcement agencies, county Child and Family Services, and county Social Services workers; (16) related information from the Electronic Suspected Child Abuse Report System reflecting messages between law enforcement and Child and Family Services about the family before and after Mariah's death; (17) all entries in the Automated Referral Entry System and Call Back Automated System regarding any referral to an agency for an emergency response; (18) all CASA reports; (19) the California Law Enforcement Telecommunication System history for the family; (20) the Child Abuse Central Index history for the family; (21) the County social services agency history for the family; (22) autopsy or medical examiner reports; and (23) Mariah's medical records.

[5]  In its return, the department asserts its response was timely because the local practices of the Madera Superior Court Juvenile Division deem the time for filing objections to section 827 requests runs from the date the clerk of the court serves the request on all interested parties, which occurred on September 8, 2021.

proposition that section 827(a)(2) applied notwithstanding the lack of a juvenile dependency petition or jurisdictional finding is fundamentally flawed and disputed its applicability as precedent. The department noted the parties were in litigation at the appellate level before this court in two appeals and a writ petition Therolf filed to obtain review of the trial court's denial of section 827(a)(2) petitions he brought seeking the juvenile case files of two siblings.[6] The department attached a summary of the argument it made in response to those cases, which set forth its analysis and argument as to why *Elijah S.* should not be followed, and asked the juvenile court to refrain from ruling on the issue pending our decision in those cases.

The department recognized Mariah was the subject of a prior juvenile dependency case that resulted in her adoption, the legal change of her name, and termination of dependency jurisdiction. The department objected to the release of this file as being detrimental to the safety, protection, or physical or emotional well-being of another child connected to the juvenile case. The department asserted the records "would be indelibly intertwined with those of any siblings [Mariah] may have had and who may have been concurrently detained and found to be dependent minors," and "[i]t would likely be impossible to effectively redact the extensive record of that case so as to obscure the identities of any such siblings, who's privacy interests would be heightened should they also have been subject to adoption and subsequent name changes." The department argued since Therolf was seeking the records "to further publicize the intimate details of Mariah's life," the release of this file as well as the juvenile case file concerning the siblings detained after Mariah's death would risk publication of any sibling's statutorily protected information and be detrimental to their physical or emotional well-being. The department asserted redaction could not prevent the identification of information

---

[6] The appeals are cases Nos. F082698 and F082701, while the writ is case No. F082993.

concerning Mariah's siblings considering the publicity surrounding the case and attached a 2020 newspaper article concerning the case as an example of such publicity.

On September 23, 2021, the juvenile court issued an order, using mandatory form JV-573, on which it checked the box next to item 5, which states: "The child is deceased and the court will conduct a review of the juvenile case file and any filed objections." That same day, the juvenile court filed an order after judicial review of the petition using mandatory form JV-574.[7] The juvenile court checked the box next to item 5, which states: "The child is deceased and the request is denied. The court finds by a preponderance of the evidence that access to the juvenile case file or of any portion of it is detrimental to the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the request." The juvenile court did not make any written findings, although handwritten notations that were on forms JV-573 and JV-574 were crossed out.[8]

The department requested a hearing, which was held on October 21, 2021. County counsel told the court he set the hearing to clarify if it was the court who deleted the handwritten notations and markings that were on the order. The juvenile court confirmed it did not make the notations and it deleted them. County counsel stated the department intended to submit additional documents in anticipation of a hearing being set, but since a hearing was not held, it did not have an opportunity to do so.[9] The juvenile court

[7] Therolf submitted forms JV-573 and JV-574 with his petition. On both forms, he handwrote notations, which he asserts in his writ petition he made to try to correct errors on the form that do not conform with the requirements of section 827(a)(2).

[8] In his petition, Therolf asserts the juvenile court did not mail the department's objection to him until the day after it denied the petition and did not serve the order denying the petition until September 28, 2021, as shown by a postmarked envelope included in the exhibits to the writ petition.

[9] The department asserts in its return that if a hearing on the petition had been held, it would have presented information concerning the existence of M.F.'s siblings orally, in the form of argument, with the confidentiality protections afforded juvenile proceedings. Since the hearing did not occur, it was denied the opportunity to present further argument on that issue.

responded it already denied the petition and did not know what county counsel wanted. County counsel responded he was not asking for a specific order—he just wanted clarification and to let the court know about the documents. Therolf's attorney stated she believed the statute requires a hearing and allows for a reply brief, which they did not have time to file. The juvenile court responded Therolf could seek relief by appeal or writ.

## DISCUSSION

### I.    Release of a Deceased Child's Juvenile Records

"Section 827 governs the granting of access to confidential juvenile records by individuals and the public." (*Elijah S., supra*, 125 Cal.App.4th at p. 1541.)  In 1999, prompted by the deaths of several dependent children, the Legislature decided to create an inroad into the barrier of confidentiality protecting juvenile court records and open a deceased child's records to public scrutiny to "promote free investigation, uncover any government culpability, and prompt necessary changes in the system of placing and monitoring dependents." (*Pack, supra*, 89 Cal.App.4th at p. 828.)  To that end, the Legislature amended section 827(a)(2) to provide the juvenile case files of a *deceased* child "who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has

---

The department also asserts it informally advised the juvenile court clerk's documents potentially relevant to the request would be produced prior to the hearing.  The department asserts its reticence to revealing confidential information was warranted, as Therolf's attorney filed a declaration in the writ proceeding in the other case, case No. F082993, to which was attached Therolf's request for disclosure of Mariah's juvenile case file, the department's objection, and the juvenile court orders denying the request.  The department asks us to take judicial notice of the declaration, asserting it is relevant because it demonstrates Therolf's disclosure of confidential case file information.  We deny the request, however, as it is not relevant to the issues we address in this writ proceeding.

been filed and interested parties have been afforded an opportunity to file an objection." (§ 827, former subd. (a)(2), as amended by Stats. 1999, ch. 996, § 22.3.)[10]

While the juvenile records of living children are entitled to a "veritable presumption in favor of confidentiality," when the child is deceased, section 827(a)(2), creates "a veritable presumption in favor of release." (*Pack, supra*, 89 Cal.App.4th at p. 829.) "Thus, unlike records pertaining to a living dependent, which must be maintained as confidential unless some sufficient reason for disclosure is shown to exist, records pertaining to a deceased dependent must be disclosed unless the statutory reasons for confidentiality are shown to exist." (*Ibid.*)

## A.    The *Pack* Decision

Two years later, in 2001, this court addressed the construction and application of section 827(a)(2) in *Pack*.  (*Pack, supra,* 89 Cal.App.4th at p. 825.)  There, two newspapers brought petitions for access to the juvenile case files of a dependent child whose foster mother was charged with his murder.  (*Id.* at pp. 825–826.)  After a hearing and review of the records in camera, the juvenile court denied the petitions, finding release of any information from the files "'would be detrimental to the safety, protection,

---

[10]     Section 827, former subdivision (a)(2), as amended, provided in its entirety: "Notwithstanding any other law and subject to subparagraph (A) of paragraph (3), juvenile case files, except those relating to matters within the jurisdiction of the court pursuant to Section 601 or 602, which pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection.  Any information relating to another child or which could identify another child, except for information about the deceased, shall be redacted from the juvenile case file prior to release, unless a specific order is made by the juvenile court to the contrary.  Except as provided in this paragraph, the presiding judge of the juvenile court may issue an order issuing an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing that release of the juvenile case file or any portion thereof is detrimental to the safety, protection, or physical, or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition." (§ 827, former subd. (a)(2), as amended by Stats. 1999, ch. 996, § 22.3.)

9.

physical, or emotional well-being of another child who is directly or indirectly connected to the juvenile case.'" (*Id.* at p. 826.)

On appeal, we rejected the newspapers' contention that redaction was the only tool available to protect other children and concluded, based on the statute's language, the juvenile court's power to restrict or deny access to a deceased child's records was an alternative to redaction. (*Pack, supra*, 89 Cal.App.4th at pp. 827, 830–831.) We explained the statute allows the juvenile court to redact information concerning living children to maintain the confidentiality that pertains to them, but where redaction is insufficient to protect the living child, the juvenile court may limit or prohibit access to all or part of the records when disclosure would be detrimental to the living child. (*Id.* at pp. 829–830.) Since the statute manifests a legislative intent that information about the deceased child is not to be excised even if the information relates to or identifies another child, once the juvenile court redacts information pertaining solely to the living child, the court may limit or prohibit the dissemination of information about the deceased child if it concludes that information would "somehow tend to harm the other child." (*Id.* at pp. 830–831, fn. omitted.)

We also rejected the newspapers' assertion the juvenile court was required to provide specific factual findings when finding release of the records would be detrimental to a living child. (*Pack, supra,* 89 Cal.App.4th at pp. 831–832.) We concluded it was sufficient for the juvenile court to recite the statute's language, as "the statutory language describes a circumstance that is as concrete as it rationally can be, given the confidential nature of the information about the other children." (*Id.* at p. 833.) Moreover, a juvenile court's conclusion that releasing information concerning the deceased child is "'detrimental to the safety, protection, or physical, or emotional well-being' of an involved living child recites a legitimate reason for retention and provides the appellate court with a point on which to focus its evaluation of the record," and reflects an "implicit determination" that redaction "would not guard the interests of that child

10.

because of the nature of the information pertinent to [the deceased child]." (*Id.* at pp. 833–834.)[11]

We determined substantial evidence is the appropriate standard of review of a juvenile court's order withholding a deceased child's records based on prejudice to an involved child. (*Pack, supra*, 89 Cal.App.4th at p. 838.) Applying this standard to the records the parties submitted to the juvenile court to review, we concluded substantial evidence supported the court's refusal to release the deceased child's records.[12] (*Pack, supra*, at p. 841.) We explained that after reviewing the records, we understood why the juvenile court found it "difficult to expound on its conclusions" without compromising the living child's interests and agreed the records' contents justified the conclusion that "release of any part of them would be highly detrimental to the well-being of another child." (*Ibid.*) The records showed the children were intimately linked in the dependency proceeding, as the initial dependency petition named another child, the subsequent documents and reports involved the other child, and the child welfare agency closely supervised both children, which made it impossible to disclose information relating to the deceased child without disclosing the identity of, or information prejudicial to the interests of, the living child. We further found redaction was not a reasonable remedy as little in the files related only to the living child and if only that child's name

---

[11]    In so holding, we were concerned that "any more specific standard would risk, on the one hand, the exclusion of a case where the maintenance of confidentiality is appropriate and, on the other, the disclosure of confidential information in an effort to support a decision intended to protect that information." (*Pack, supra,* 89 Cal.App.4th at p. 834.)

[12]    The parties had agreed the juvenile court would review the records in camera, which we noted was an appropriate procedure that involved the parties presenting a general outline of their respective positions supported by nonconfidential or nonprivileged evidence and identifying the specific confidential or privileged evidence for in camera review, with the juvenile court preserving the in camera records for later appellate review. (*Pack, supra*, 89 Cal.App.4th at pp. 826, 837–838 & fn. 14.)

were excised, what remained would serve to identify that child and open to view information that was relevant and prejudicial to that child. (*Id.* at pp. 841–842.)[13]

## B.     The *Elijah S.* Decision

Four years later, the First District Court of Appeal was presented with the issue of "whether section 827 permits the disclosure of juvenile records in cases involving deceased children where no formal jurisdictional petition had been filed in juvenile court." (*Elijah S., supra,* 125 Cal.App.4th at p. 1538.)  There, two newspapers conducting a journalistic investigation filed petitions for disclosure of child welfare agency and juvenile court records pertaining to two deceased children who they alleged were juvenile court dependents at the time of their deaths. (*Id.* at p. 1539.)  At the hearing on the petitions, a child welfare services supervisor testified the agency had not filed a dependency petition with respect to either child, and there were no court records in either case, although she acknowledged the agency generated records regarding any child until the child reached 21 years old, which were maintained indefinitely, and did not testify there were no agency records regarding the children. (*Id.* at p. 1540.)  The juvenile court granted the petitions for disclosure of the agency's records, finding that under section 827 and the case law interpreting it, it had authority to determine whether to release juvenile records regardless of whether formal jurisdictional proceedings had been initiated. (*Elijah S., supra*, at p. 1540.)

The appellate court agreed, holding that in light of the statute and applicable case law, "the juvenile court has exclusive authority to order release of juvenile records of deceased minors who come within its jurisdiction pursuant to section 300," regardless of whether a juvenile dependency petition had been filed prior to or concurrently with the

---

[13]     Although not required, we also independently reviewed the deceased child's records and concluded their release would be "'detrimental to the safety, protection, or physical, or emotional well-being of another child'" directly connected to the deceased child's case and redaction from the case file of all information "pertaining solely to the other child is not a viable, less restrictive alternative." (*Pack, supra*, 89 Cal.App.4th at p. 842.)

12.

filing of a petition for disclosure under section 827. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1538–1539; accord, *id.* at p. 1556.)

To reach this holding, the appellate court began with the only jurisdictional requirement set out in section 827(a)(2) for the mandatory release of juvenile case files, namely, that the files "'"pertain to a deceased child *who was within the jurisdiction of the juvenile court pursuant to Section 300*.'"" (*Elijah S., supra*, 125 Cal.App.4th at p. 1543.) The appellate court noted under section 300, a child who has suffered or will likely suffer specified physical or emotional neglect or abuse is within the juvenile court's jurisdiction, which may adjudge the child to be a dependent of the court, and section 300 does not require the filing of a dependency petition as a prerequisite to the exercise of juvenile court jurisdiction. (*Elijah S., supra*, at pp. 1543–1544.) The appellate court reasoned that since section 300 implies that a child may come within the juvenile court's jurisdiction before the juvenile court adjudges the child to be a dependent, "[b]y extension, 'a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300' for purposes of section 827, subdivision (a)(2) need not have been the subject of any section 332 dependency petition for the juvenile court to have jurisdiction to release his or her records." (*Elijah S., supra*, at p. 1544.)

The appellate court concluded the petitioning party must make the threshold jurisdictional showing the "deceased minor 'was within the jurisdiction of the juvenile court' under section 300 by virtue of the fact said minor 'comes within any of the … descriptions' set out in that statute." (*Elijah S., supra*, 125 Cal.App.4th at p. 1544.) Noting the juvenile court did not expressly find the deceased children came within its jurisdiction pursuant to section 300, the appellate court pointed out the agency failed to contest the newspapers' allegation the children came within dependency jurisdiction, thereby effectively waiving any opposition to that allegation. (*Elijah S., supra*, at p. 1545.) The appellate court concluded that in ordering disclosure of the records, the juvenile court "made an *implied* determination that the deceased minors came within the

definitional descriptions enumerated in section 300, and were therefore within its jurisdiction, and that there was sufficient evidence to support this determination." (*Id.* at pp. 1545–1546.)

The appellate court rejected the agency's argument the juvenile court must have entered a jurisdictional finding pursuant to a previously filed dependency petition as a prerequisite to any juvenile court order permitting disclosure of juvenile case records. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1546, 1551.) The appellate court found the facts that section 827(a)(2) did not refer to dependency petitions and section 827 did not contain any language requiring the filing of a dependency petition before the juvenile court may release juvenile records strongly supports the interpretation the filing of a dependency petition is not a prerequisite for disclosure. (*Elijah S., supra*, at pp. 1546–1547.) The appellate court determined this construction found support in "numerous provisions of the Welfare and Institutions Code that assume a child may be 'within the jurisdiction of the juvenile court' pursuant to section 300 in the absence of, or prior to, the filing of a section 332 petition," including sections 301, 302, subdivision (a), 305, 306, 307, 307.5, 329 and 331. (*Elijah S., supra*, at pp. 1547–1548.)

The appellate court further noted the juvenile court "bears ultimate supervisory responsibility with respect to agency contacts with and actions taken regarding children described by section 300 as 'within the jurisdiction of the juvenile court,'" pursuant to which the records of agency contacts with such children are necessarily under the juvenile court's authority and jurisdiction regardless of whether a dependency petition has been filed. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1548–1549.) While there were no cases directly on point, the appellate court found decisional authority in several analogous cases supported the juvenile court's jurisdictional authority to release records relating to a deceased child under section 827(a)(2) despite the absence of a dependency

petition.[14]  The appellate court concluded that because nothing in the statute suggests the juvenile court lacks authority or jurisdiction to release a deceased child's juvenile case files unless a dependency petition had been filed, the juvenile court has that authority and jurisdiction, therefore "the juvenile court did not err in doing so in this case, pursuant to its implied jurisdictional determination under section 300." (*Elijah S., supra*, at p. 1551.)

The appellate court rejected the agency's argument the statutory definition of "'juvenile case file'" found in section 827, subdivision (e)[15] and the California Rules of Court shows the juvenile court is without jurisdiction to order disclosure of juvenile records of deceased children in the absence of a dependency petition. (*Elijah S., supra*, 125 Cal.App.4th at p. 1551.)  The appellate court noted:  (1) the statutory definition includes "written reports and documentation [that] are not always required to be filed directly with the juvenile court, and are frequently under the control of the applicable county agencies rather than in the possession of the juvenile court"; (2) section 827, subdivision (e) does not specifically require the filing of a dependency petition as a

---

**14**    The appellate court cited to *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767, *Wescott v. County of Yuba* (1980) 104 Cal.App.3d 103, and *Lorenza P. v. Superior Court* (1988) 197 Cal.App.3d 607.  As the court explained in *Elijah S.*, in *T.N.G. v. Superior Court*, our Supreme Court upheld the juvenile court's authority and jurisdiction "to control the juvenile records of minors who had been temporarily detained by juvenile court authorities and then released without any further proceedings such as the filing of petitions for dependency or wardship." (*Elijah S., supra*, 125 Cal.App.4th at p. 1549.)  Similarly, the appellate court in *Wescott v. County of Yuba* "upheld the juvenile court's authority and jurisdiction under section 827 to control the release or disclosure of all records of juvenile arrests or detentions, even where no juvenile petition had ever been filed and no juvenile court proceedings were pending." (*Elijah S., supra*, at pp. 1549–1550.)  Finally, the *Elijah S.* court noted the appellate court in *Lorenza P. v. Superior Court* reiterated that the juvenile court has exclusive jurisdiction to determine the extent to which agency files may be released, even if juvenile court proceedings are not instituted and the matter is handled informally. (*Elijah S., supra*, at p. 1550.)

**15**    Section 827, subdivision (e) provides:  "For purposes of this section, a 'juvenile case file' means a petition filed in a juvenile court proceeding, reports of the probation officer, and all other documents filed in that case or made available to the probation officer in making the probation officer's report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer."

"precondition to a juvenile court's having jurisdiction over these 'juvenile case files'";

and (3) there was no "indication that documents generated or maintained by social

workers, probation officers and public agency personnel with respect to *suspected* cases

of child neglect or abuse must be filed with the juvenile court *before* they may be

included in the definition of 'juvenile case files' subject to release under section 827,

subdivision (a)(2)." (*Elijah S., supra*, at p. 1552.) Accordingly, the appellate court

concluded "the term 'juvenile case file,' as defined and used in section 827, 'covers a

wide range of records, including agency files where no juvenile court proceedings have

been instituted and the matter is handled informally. [Citations.]'" (*Ibid.*, quoting 87

Ops.Cal.Atty.Gen. 75–76 (2004).)[16]

Finally, the appellate court determined the legislative history supported "the

conclusion that in enacting section 827, subdivision (a)(2), the Legislature intended to

significantly *increase* the public's right of access to otherwise confidential juvenile

records concerning deceased children, by creating a *presumption* in favor of the release of

such records based on the premise that the child's death had eliminated his or her legal

interest in the confidentiality of such records." (*Elijah S., supra,* 125 Cal.App.4th at

p. 1555.) Thus, the Legislature's intent was not to further limit the juvenile court's

authority to order disclosure of this information, but rather to "*require* the juvenile court

to release the records unless the privacy rights of third parties were involved," and the

Legislature wanted to open "the workings of the entire juvenile court and child protective

system" to public view "for the purpose of exposing deficiencies therein, and thereby

enabling their correction." (*Ibid.*) The appellate court concluded this purpose "would not

---

[16]     Similarly, the appellate court found former rule 1423 (now rule 5.552(a)), which listed
documents included in the term "juvenile case files," did not mention a requirement that a
dependency petition be filed before a juvenile court may order the release of juvenile case files
and included documents that may have been generated by investigations preceding the filing of
any dependency petition, none of which are contingent on a petition ever having been filed.
(*Elijah S., supra*, 125 Cal.App.4th at pp. 1552–1553.)

16.

be advanced by limiting disclosure of juvenile records to only those generated and maintained by the juvenile court *after* a minor had already been declared a dependent," and restricting the juvenile court's power "would effectively make it *impossible* to investigate the kinds of errors or negligence that might lead to the death of a minor *before* the responsible agency had filed a dependency petition with the juvenile court." (*Id.* at p. 1556.) Instead, these deficiencies could be exposed only "if the juvenile court maintains authority to order the release of such documentation regardless of whether or not a juvenile dependency petition had previously been filed." (*Ibid.*)

## C. The 2007 Statutory Amendments

Thereafter, concerns were raised that the procedure established in section 827, former subdivision (a)(2) for "accessing files of children who died as a result of abuse or neglect has proven to be difficult and too costly to use because the courts lack clear guidance, resulting in delays as well as inconsistencies between counties on what information is required to be disclosed," thereby frustrating "the ability to review these cases of child death promptly and to advocate for changes to prevent any other child from suffering the same fate." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 39 (2007–2008 Reg. Sess.) as amended Apr. 19, 2007, pp. 2–3; see Stats. 2007, ch. 468, § 1(d) (Senate Bill 39 or Sen. Bill 39).)[17] The Legislature became concerned the standards for disclosure were vague and provided the juvenile court judge so much discretion that counties that wanted "to avoid public scrutiny of their operations when children die on

---

[17] We previously informed the parties we may take judicial notice, on our own motion, of certain legislative history materials related to the 2007 amendments to section 827, and now conclude judicial notice is proper. (See Evid. Code, §§ 452, 455, subd. (a), 459 subd. (c); *Doe v. City of Los Angeles* (2007) 42 Cal.4th 534, 544, fn. 4; *Hensel Phelps Construction Co. v. Superior Court* (2020) 44 Cal.App.5th 595, 611, fn. 4.) Therefore, we will take judicial notice of the material identified in the text above, as well as the following: (1) Assembly Committee on the Judiciary, Analysis of Senate Bill 39 (2007–2008 Reg. Sess.) as amended June 12, 2007; and (2) Senate Rules Committee, Office of Senate Floor Analyses, Unfinished Business, Analysis of Senate Bill 39 (2007–2008 Reg. Sess.) as amended June 28, 2007.

their watch" could find "an abundance of grounds for generating litigation," which "thwart[s] one of the aims of public disclosure," namely, to prevent future deaths, and creates litigation costs that effectively block nonprofits from seeking documents. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, as amended Apr. 19, 2007, *supra*, pp. 5–6.)

To address these concerns, in 2007 the Legislature established an expedited process for the release of specific information in county welfare agency records that relate to the death of a child and to clarify the presumption of disclosure in existing law, subject to the statutory grounds limiting or prohibiting disclosure. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39*, supra*, as amended Apr. 19, 2007, p. 3.) The process consists of a "three-part approach to increasing public access to information surrounding the death of a child from abuse or neglect": (1) an informational announcement is made about the death, which provides limited information regarding the deceased child where there is a reasonable suspicion the death is the result of abuse or neglect; (2) specified documents in a county welfare agency's juvenile case file related to the child's death may be provided without court review when the child's death is substantiated to be from abuse or neglect; and (3) the court procedure for access to other documents not provided under the first two categories is expedited, with additional legislative guidance given to courts in reviewing section 827(a)(2) petitions for disclosure of a deceased child's records. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, as amended Apr. 19, 2007, pp. 1, 5; Assem. Com. on Judiciary, Analysis of Sen. Bill 39 (2007–2008 Reg. Sess.) as amended June 12, 2007, p. 4.)

In establishing this process, the Legislature expressly declared its intent to "maximize public access to juvenile case files in cases where a child fatality occurs as a result of child abuse or neglect by both providing for an administrative release of certain documents without the filing of a legal petition pursuant to" section 827(a)(2), and "by enacting reforms to the current process of filing a petition pursuant to" section 827(a)(2) "that will offer clarifying guidance to juvenile courts of the legal standards that apply to

18.

those petitions and an expedited process for their disposition." (Sen. Bill 39, § 1(e).) The Legislature further declared that "[i]n petitions governed by" section 827(a)(2), "the Legislature has concluded that when a dependent child dies within the jurisdiction of the juvenile court, the presumption of confidentiality for juvenile case files evaporates and the requirement of an expedited decision becomes manifest, because community reaction to the child's death may abate with the passage of time and, without a prompt investigation and assessment, the opportunity to effect positive change may be lost." (*Id.*, § 1(f).)

To enact these changes, the Legislature added sections 826.7 and 10850.4 to the Welfare and Institutions Code and amended section 827(a)(2). (Sen. Bill 39, §§ 2–4.) Section 826.7 provides: "Juvenile case files that pertain to a child who died as the result of abuse or neglect shall be released by the custodian of records of the county welfare department or agency to the public pursuant to Section 10850.4 or an order issued pursuant to paragraph (2) of subdivision (a) of Section 827." (Sen. Bill 39, § 2.)

Section 10850.4 contains the first two parts of the disclosure requirements. First, section 10850.4, subdivision (a) requires the county welfare agency's custodian of records to release certain information upon request within five business days of learning a child fatality has occurred in the county and "there is a reasonable suspicion that the fatality was caused by abuse or neglect." The following information is required to be released: (1) the child's age and gender; (2) the date of death; (3) whether the child was in foster care or the home of his or her parent or guardian at the time of death; and (4) whether a law enforcement agency or county child welfare agency is conducting an investigation. (*Id.*, subd. (a)(1)–(4).)

When the child abuse or neglect investigation into the child's death is completed and abuse or neglect is determined to have led to the child's death, as shown by either a county child protective services agency substantiating the abuse or neglect, a law enforcement investigation concluding abuse or neglect occurred, or a coroner or medical

19.

examiner concluding the child suffered abuse or neglect, the custodian of records must release certain "documents from the juvenile case file" upon request, subject to redactions set forth in section 10850.4, subdivision (e). (*Id.*, subds. (b) & (c).)[18] Prior to releasing the documents, the custodian of records is required to redact: (1) identifying information of any person or institution mentioned in the documents, other than the county or the State Department of Social Services; (2) "[a]ny information that would, after consultation with the district attorney, jeopardize a criminal investigation or proceeding"; and (3) "[a]ny information that is privileged, confidential, or not subject to disclosure pursuant to any other state or federal law." (§ 10850.4, subd. (e)(1).)

When the custodian of records receives a request for documents, the custodian is required to "notify and provide a copy of the request upon counsel for any child who is directly or indirectly connected to the juvenile case file." (§ 10850.4, subd. (f).) If

---

[18] The "documents from the juvenile case file" that must be released differ depending on whether the child was living with a parent or guardian or was in foster care when the child's death occurred. (§ 10850.4, subd. (c)(2) & (c)(3).) As pertinent here, the documents required to be released when the child was living with a parent or guardian, as amended by the Legislature in 2016, are "all previous referrals of abuse or neglect of the deceased child while living with that parent or guardian" (*id.*, subd. (c)(2)) and the following documents: "(A) The emergency response referral information form and the emergency response notice of referral disposition form completed by the county child welfare agency relating to the abuse or neglect that caused the death of the child. [¶] (B) Any cross reports completed by the county child welfare services agency to law enforcement relating to the deceased child. [¶] (C) All risk and safety assessments by the county child welfare services agency to law enforcement relating to the deceased child. [¶] (D) All health care records of the deceased child, excluding mental health records, related to the child's death and previous injuries reflective of a pattern of abuse or neglect. [¶] (E) Copies of police reports about the person whom the child abuse or neglect was substantiated. [¶] (F) A description of child protective or other services provided and actions taken by the child welfare agency, and juvenile court if applicable, relating to the deceased child, addressing any services and actions that are not otherwise disclosed within other documents required for release pursuant to this section, including the date and a written description of any such service or action taken." (*Id.*, subd. (c)(2)(A)–(F); accord, Legis. Counsel's Dig., Assem. Bill No. 1625 (2015–2016 Reg. Sess.) Stats. 2016, ch. 320, § 3, pp. 4–5.) The statute defines the terms "'[j]uvenile case files'" or "'case files'" to "include[] any juvenile court files, as defined in Rule 5.552 …, and any county child welfare department or agency or State Department of Social Services records regardless of whether they are maintained electronically or in paper form." (§ 10850.4, subd. (k)(3).)

counsel for a child, including the deceased child or any sibling of the deceased child, objects to the documents' release, "they may petition the juvenile court for relief to prevent the release of any document or part of a document requested pursuant to paragraph (2) of subdivision (a) of section 827." (*Ibid.*) "Juvenile case records that are not subject to disclosure pursuant to this section shall only be disclosed upon an order by the juvenile court pursuant to Section 827." (*Id.*, subd. (g).)

Finally, the Legislature amended section 827, former subdivision (a)(2) to clarify the judicial procedure for release of the juvenile case files of a deceased child. That subdivision was renumbered subdivision (a)(2)(A) and amended to clarify that where a presiding judge is considering limiting or prohibiting access to a juvenile case file, a showing that release of the information is detrimental to the well-being of another child must be made by a preponderance of the evidence.[19] (Sen. Com. on Judiciary, Analysis of Sen. Bill 39*, supra*, as amended Apr. 19, 2007, p. 10.) Subdivision (a)(2)(B) and (a)(2)(C) were added to section 827 to affirm, respectively, there is "a presumption in favor of the release of documents when a child is deceased unless the statutory reasons for confidentiality are shown to exist,"[20] and "[i]f a child whose records are sought has

---

[19] Section 827(a)(2)(A) now provides: "Notwithstanding any other law and subject to subparagraph (A) of paragraph (3), juvenile case files, except those relating to matters within the jurisdiction of the court pursuant to Section 601 or 602, that pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection. Any information relating to another child or that could identify another child, except for information about the deceased, shall be redacted from the juvenile case file prior to release, unless a specific order is made by the juvenile court to the contrary. Except as provided in this paragraph, the presiding judge of the juvenile court may issue an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing by a preponderance of evidence that release of the juvenile case file or any portion thereof is detrimental to the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition."

[20] In adding subdivision (a)(2)(B) to section 827, the Legislature stated it was affirming the presumption "in favor of the release of information when a child is deceased unless statutory grounds for non- or partial disclosure or redaction of information exist." (Sen. Com. on

died, and documents are sought pursuant to this paragraph, no weighing or balancing of the interests of those other than a child is permitted." (§ 827 (a)(2)(B) & (a)(2)(C).)[21]

Finally, subdivision (a)(2)(D) through (F) were added to section 827 to establish the procedure for a court petition to obtain other records not available through administrative release. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 10.) The petitioner serves the petition on interested parties whose identities and addresses are known to the petitioner and on the custodian of records, who in turn must serve a copy of the petition on all interested parties the petitioner did not serve. (§ 827(a)(2)(D).) An interested party, including the custodian of records, may object to the petition and "shall file and serve the objection on the petitioning party no later than 15 calendar days after service of the petition." (*Id.,* subd. (a)(2)(E).) The petitioning party "shall have 10 calendar days to file a reply." (*Id.,* subd. (a)(2)(F).) "The juvenile court shall set the matter for hearing no more than 60 calendar days from the date the petition is served on the custodian of records," and "render its decision within 30 days of the hearing." (*Ibid.*) The juvenile court is required to decide the matter solely upon the basis of the petition, objection, reply, and argument at the hearing, and the court may order the appearance of witnesses on its own motion.

Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 3; Sen. Rules Com., 3d reading analysis of Sen. Bill 39 (2007–2008 Reg. Sess.) as amended May 1, 2007, p. 2.) The Legislature noted that "[e]xisting case law provides that a deceased child is 'within the jurisdiction of the juvenile court' if the court may adjudge that child to be a dependent of the court under § 300, even where no juvenile petition has been filed," citing *Elijah S., supra*, 125 Cal.App.4th 1532. (Sen. Rules Com., *supra*, as amended May 1, 2007, p. 2; Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 3.)

[21]     In adding subdivision (a)(2)(C) to section 827, the Legislature stated it was affirming the holding in *Pack, supra*, 89 Cal.App.4th 821, "that where the child whose records are sought has died, no balancing or weighing of interests is required except where the interests of another child are involved." (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, as amended Apr. 19, 2007, p. 3; Sen. Rules Com., 3d reading analysis of Sen. Bill 39, *supra*, as amended May 1, 2007, p. 2.)

(*Ibid.*) If an objection is not filed, the juvenile court "shall review the petition and issue its decision within 10 calendar days of the final day for filing the objection." (*Ibid.*)[22]

## II. The Juvenile Court Committed Prejudicial Error

Against this backdrop, Therolf sought to obtain Mariah's juvenile case file, including the file from the dependency case that resulted in her 2014 adoption and any postadoption investigations into abuse, by filing a petition pursuant to section 827(a)(2).

### A. The Hearing Requirement

Section 827(a)(2)(F) provides that the petitioning party "shall have 10 calendar days to file a reply" and requires the juvenile court to hold a hearing if an interested party opposes a request for the release of a deceased child's juvenile case file.[23] The hearing requirement is clear from the statute: "The juvenile court *shall set the matter for hearing*" within 60 days from the date the petition is served on the custodian of records and "*shall* render its decision within 30 days of the hearing." (*Ibid.*, italics added.) Moreover, the matter is to be decided solely on the petition, objection, reply, "*and argument at hearing.*" (*Ibid.*, italics added.) The only exception to the hearing

---

[22] Section 827(a)(2)(F) provides: "The petitioning party shall have 10 calendar days to file a reply. The juvenile court shall set the matter for hearing no more than 60 calendar days from the date the petition is served on the custodian of records. The court shall render its decision within 30 days of the hearing. The matter shall be decided solely upon the basis of the petition and supporting exhibits and declarations, if any, the objection and any supporting exhibits or declarations, if any, and the reply and any supporting declarations or exhibits thereto, and argument at hearing. The court may, solely upon its own motion, order the appearance of witnesses. If an objection is not filed to the petition, the court shall review the petition and issue its decision within 10 calendar days of the final day for filing the objection. An order of the court shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ."

[23] We note when interpreting section 827(a)(2), we apply the de novo standard of review. (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986–987; see *County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1314 [trial court does not have discretion to ignore a statute's clear language]; *Thornton v. Carlson* (1992) 4 Cal.App.4th 1249, 1255 [when the trial court's decision is based solely on an interpretation of a statute, appellate court reviews the matter as a question of law].)

requirement is when no objection is filed: "If an objection is not filed to the petition, the court shall review the petition and issue its decision within 10 calendar days of the final day for filing the objection." (*Ibid.*)[24]

The department concedes the juvenile court erred. We accept the concession, as under the plain statutory language, after the department filed an objection, the juvenile court was required to allow Therolf time to file a reply and to hold a hearing. The juvenile court was then required to consider not only the petition, objection, and any reply, but also the arguments made at the hearing, before ruling on the petition. The juvenile court, therefore, erred when it ruled on the petition before the time to file a reply had expired and without holding a hearing.

**B.     *Elijah S.* Controls**

It is undisputed that when Mariah died, there was no dependency petition pending in the juvenile court concerning her and the juvenile court had not found she "was within the jurisdiction of the juvenile court pursuant to Section 300," as required under section 827(a)(2). Under *Elijah S.*, however, neither the filing of a dependency petition nor a prior jurisdictional finding is required for section 827(a)(2) to apply. Rather, the

---

**24**     Form JV-573 lists six findings and orders the juvenile court may make on a request for disclosure of juvenile case files. Item 4 provides: "The child is deceased and the court sets a hearing on the request," while item 5, which the juvenile court selected here, provides: "The child is deceased and the court will conduct a review of the juvenile case file and any filed objections." Item 5, however, conflicts with section 827(a)(2)(F), which requires a hearing when objections are filed; in that situation, the juvenile court has no discretion to conduct an in camera review without holding a hearing. We note rule 5.552(d), which sets out the procedure for obtaining the juvenile case files of living children, grants the juvenile court discretion over whether to hold a hearing, as it permits the juvenile court to summarily deny a petition that does not show good cause and provides that the juvenile court "*may* set a hearing" if good cause is shown. (*Id.*, (d)(1) & (d)(2), italics added.) Rule 5.553(1), however, provides that "[w]hen the juvenile case file of a deceased child is sought, the court must proceed … [¶] [u]nder section 827(a)(2) if the request is made by a member of the public …." Since section 827(a)(2)(F) requires a hearing when an objection is filed, the juvenile court does not have discretion to review the juvenile case file and any objections, as stated in item 5 on form JV-573, without first holding a hearing.

24.

juvenile court has exclusive authority to order release of a deceased child's juvenile records regardless of whether a dependency petition has been filed and a prior jurisdictional finding has been made. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1538–1539, 1556.) Thus, a party seeking the juvenile case file of a deceased child may obtain those records if that party can show the child "'was within the jurisdiction of the juvenile court'" under section 300 when the child died. (*Elijah S., supra*, at pp. 1544–1545.)

The department argues *Elijah S.* is wrongly decided and urges us not to follow it, asserting it is based on a "drastic misunderstanding of juvenile dependency law" and a "severely misguided application of that law" to the concept of dependency jurisdiction. We decline the department's invitation to depart from *Elijah S.* The legislative history of the 2007 amendments shows the Legislature was aware of the holding in *Elijah S.*, as in its reports it cited the case as existing case law that "provides that a deceased child is 'within the jurisdiction of the juvenile court' if the court may adjudge that child to be a dependent of the court under § 300, even where no juvenile petition has been filed." (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 3; accord, Sen. Rules Com., Office of Sen. Floor Analyses, Rep. on Sen. Bill 39 (2007–2008 Reg. Sess.) as amended June 28, 2007, p. 2.) Notably, the Legislature did not disapprove of *Elijah S.* or amend the statute to require a dependency petition or a prior jurisdictional finding. Instead, the Legislature maintained the statutory language the *Elijah S.* court interpreted and affirmed the "presumption in favor of the release of documents when a child is deceased unless the statutory reasons for confidentiality are shown to exist." (§ 827, subd. (a)(2)(B).) We generally presume the Legislature is aware of appellate court decisions, therefore, when "'the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction.'" (*City and County of San Francisco v. Strahlendorf* (1992) 7

Cal.App.4th 1911, 1915, citing *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 734.)

The department asserts the legislative intent underlying the 1999 amendment of the statute supports a strict interpretation of jurisdiction, as it shows the Legislature did not intend to expand section 827(a)(2) beyond the juvenile case files of dependent children. But, as the appellate court concluded in *Elijah S.*, the legislative history shows the Legislature was interested in opening "the workings of the *entire* juvenile court and child protective system" to public view "for the purpose of exposing deficiencies and thereby enabling their correction," which would not be advanced if disclosure of juvenile records were limited only to those generated after a child had been declared a dependent. (*Elijah S., supra*, 125 Cal.App.4th at pp. 1555–1556, italics added.)

The department also asserts the 2007 enactment of section 10850.4 shows the Legislature intended that section "to serve as the primary vehicle for transparency, in light of the express restrictions imposed on requests made pursuant to section 827(a)(2)(A)," which, according to the Legislature's declared intent, "comes into play 'when a dependent child dies within the jurisdiction of the juvenile court.'" (See Sen. Bill 39, § 1(f).) While the Legislature used the term "dependent child" in its declarations concerning the 2007 amendments to section 827(a)(2), the Legislature also declared its intent "to maximize public access to juvenile case files in cases where a child fatality occurs as a result of child abuse or neglect by both providing for an administrative release of certain documents without the filing of a legal petition" and "enacting reforms to the current process of filing a petition" pursuant to section 827(a)(2). (Sen. Bill 39, § 1(e) & 1(f).) Given the Legislature's failure to amend section 827(a)(2)(A) to require a prior dependency petition or jurisdictional finding, and the express intent to maximize public access to juvenile case files of deceased children, we decline to read the statute narrowly.

Since neither the filing of a dependency petition nor a prior jurisdictional finding is required for section 827(a)(2) to apply, Therolf may seek the juvenile case files concerning Mariah by a petition pursuant to that section. We note that many of the documents Therolf seeks are documents listed in section 10850.4, subdivision (c)(1) and (c)(2), which he is entitled to obtain without a court order if abuse or neglect led to Mariah's death. (*Id.*, subds. (b) & (c).) The department recognizes this, but asserts Therolf must make a separate request, apart from the section 827 petition, to obtain these documents, which he apparently has not done.

Nothing prevents Therolf from obtaining these documents through a petition under section 827(a)(2). In enacting section 10850.4, the Legislature intended to create a process whereby the public may request the child welfare agency's custodian of records to release specified "documents from the juvenile case file" (*id.*, subd. (c)) without court intervention when abuse or neglect has led to a child's death. That section, however, does not preclude a party from asking the juvenile court to order the production of such documents in the first instance. Notably, section 10850.4, subdivision (f) allows counsel for a child, including the deceased child or the deceased child's sibling, who objects to the release of these documents to "petition the juvenile court for relief to prevent the release of any document or part of a document requested" under section 827(a)(2). Thus, section 827(a)(2) provides a vehicle for judicial review of requests to obtain a deceased child's juvenile case file, including documents available for disclosure without a court order, which is consonant with the juvenile court's exclusive jurisdiction to control access to juvenile dependency records. (*Elijah S., supra*, 125 Cal.App.4th at p. 1550 ["courts have consistently upheld the juvenile court's jurisdiction to control access to juvenile dependency records"].)

Therefore, Therolf is entitled to the release of those documents listed under section 10850.4, subdivision (c)(1) and (c)(2), subject to the following redactions mandated by section 10850.4, subdivision (e)(1): identifying information of any person

or institution, other than the county or State Department of Social Services; information that would, after consulting with the district attorney, jeopardize a criminal investigation or proceeding; and any information that is privileged, confidential or not subject to disclosure under any other state or federal law. The juvenile court, however, may prohibit or limit access to these documents if their release would be "detrimental to the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to the juvenile case." (§ 827(a)(2)(A).)

As for the remaining documents in Mariah's juvenile case file, including her prior dependency case file, Therolf is entitled to those documents if Mariah "was within the jurisdiction of the juvenile court" under section 300. (§ 827(a)(2)(A).) The department contends Therolf's assertion in his petition that he believed she "'died as a result of abuse or neglect'" is insufficient to support such a finding. But the department itself produced evidence, namely the newspaper article, that showed Mariah's adoptive mother was convicted of her murder and torture, which occurred between July 1, 2010, and the day she was murdered, October 10, 2014. Since a child comes within section 300, subdivision (a) if the child has suffered "serious physical harm inflicted nonaccidentally upon the child by the child's parent," and within section 300, subdivision (b)(1) if the child has suffered "serious physical harm … as a result of the failure or inability of the child's parent … to adequately supervise or protect the child," torture by one's parent certainly falls within these definitions and would support a finding of jurisdiction.[25] Because Mariah was within the juvenile court's jurisdiction under section 300 when she died, the department must produce her juvenile case file within the meaning of section 827(a)(2)(A) and *Elijah S.*, which includes the file from her prior dependency case.

---

[25] Moreover, to the extent there is insufficient evidence to establish jurisdiction, Therolf was deprived of the opportunity to present additional evidence when the juvenile court denied the petition before the time to file his reply expired and without holding a hearing.

### C. *Pack* Controls

#### 1. Factual Findings Are Not Required

Therolf contends the department was required to present evidence of detriment and the juvenile court was required to make factual findings to support its detriment finding. But, as we held in *Pack*, a juvenile court is not required to make specific factual findings when it denies access to a deceased child's juvenile case file based on a finding of detriment to a connected child in part because requiring such findings could result in the disclosure of confidential information. (*Pack, supra*, 89 Cal.App.4th at pp. 833–834.) The same concern about disclosure of confidential information is also present when a party objects to release of a juvenile case file based on detriment to a connected child. (*Id.* at p. 836 & fn. 13 [noting absent a protective order, the objectors were relegated to arguing at the hearing against disclosure in general terms and their "ability … to present facts and specific reasons supporting this stance was compromised by the need to maintain confidentiality"].)

We see no reason to deviate from *Pack* in this case. Therolf contends our holding in *Pack* cannot withstand the 2007 amendments to section 827(a)(2), which he asserts created a "new 'preponderance of evidence' standard" for courts denying unsealing requests by adding the requirement that an order prohibiting or limiting access to a deceased child's juvenile case file must be made "'*upon a showing by a preponderance of evidence*'" that release of the case file is detrimental to a connected child. (§ 827(a)(2)(A).) Therolf reasons that by adding the new standard, the statute places a duty on the juvenile court to cite evidence establishing detriment. But the legislative history shows by adding the preponderance of the evidence standard, the Legislature intended only to "clarify" the applicable standard, not create a new one. (Sen. Com. on Judiciary, Analysis of Sen. Bill 39, *supra*, as amended Apr. 19, 2007, p. 10.) Significantly, the Legislature, which was aware of the *Pack* decision, did not amend the statute to expressly state the juvenile court is required to make factual findings. (*Big*

*Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1156 ["'"Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it"'"].)

Therolf argues that Proposition 59, effective November 3, 2004, which amended the California Constitution to specifically provide for "the people's right of access to information in public settings" (*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 597), requires us to broadly interpret section 827(a)(2)'s presumptive right of access to require juvenile courts to make factual findings in support of an order denying disclosure of juvenile case files.  While the amendment expressly provides "for the broad construction of statutes furthering the people's right of access to information concerning the conduct of the people's business, the amendment specifically provided that it did not modify the constitutional right of privacy or affect the construction of any statute protecting the right to privacy."  (*In re Marriage of Burkle* (2006) 135 Cal.App.4th 1045, 1059, fn. omitted; Cal. Const., art. I, § 3, subd. (b), pars. (1) & (2) [providing for "the right of access to information concerning the conduct of the people's business," the broad construction of statutes and other authority furthering the people's right of access, and the narrow construction of statutes limiting the right of access]; Cal. Const., art. I, § 3, subd. (b), par. (3) [subd. (b) does not supersede or modify the right of privacy guaranteed in § 1 of art. I, or affect the construction of any statute or other authority protecting the right to privacy].)

Inasmuch as section 827 concerns the confidentiality of juvenile records, Proposition 59 would not affect the construction of that statute or mandate that we require the juvenile court to make specific factual findings when it denies access to those records based on detriment to a connected child.  Given the need to maintain confidentiality of juvenile records, we see no reason to depart from *Pack* and require factual findings.

## 2. The In Camera and Record Preservation Procedures

As we stated in *Pack*, the appropriate procedure when determining whether to release records pursuant to a petition under section 827(a)(2) is to have "the parties present a general outline of their respective positions supported by nonconfidential or nonprivileged evidence" and "identify the specific confidential or privileged evidence for in camera review." (*Pack, supra*, 89 Cal.App.4th at p. 838, fn. 14.) We note the department, as the custodian of records, is required to produce the responsive documents for the juvenile court to review, which here includes documents identified in section 10850.4 and other documents that constitute the juvenile case file, including documents from Mariah's prior dependency case.[26] The juvenile court, in conducting its in camera review of the documents, is required to determine whether, after information that solely concerns a connected child is redacted, release of the documents would be "detrimental to the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition." (§ 827(a)(2)(A).) The juvenile court is then required to preserve the in camera record for appellate review. (*Pack, supra*, at p. 838, fn. 14.)

While the juvenile court is not required to make specific factual findings if it withholds documents based on a finding of detriment to a connected child, the juvenile court should, as stated in *In re Keisha T.* (1995) 38 Cal.App.4th 220, "make a record of its findings adequate for review of its ruling." (*Id.* at p. 241.) But this does not necessarily require specific factual findings. The case the court cited to in *Keisha T.*, *People v. Reber* (1986) 177 Cal.App.3d 523, disapproved on another point in *People v.*

---

[26] In opposing the petition, the department did not assert that no responsive documents existed. Instead, the department conceded the existence of the case file from the prior dependency case and the article attached to the department's opposition suggests responsive documents exist from the period between termination of dependency jurisdiction and Mariah's death, as it states that at least 20 calls were made to the department, along with four written reports, concerning Mariah.

*Hammon* (1997) 15 Cal.4th 1117, 1127–1128, did not require factual findings when determining whether the defendants should be given access to privileged materials. There, the appellate court found the trial court's ruling was unreviewable because it could not determine the nature and extent of the materials that were examined in camera, as some medical records released to the defendants were in the appellate record and it was unclear whether the court examined other records covered by the subpoena, but returned them to the custodian after making its protective order. (*People v. Reber, supra*, at p. 532.) Accordingly, the appellate court found the trial court erred in part by failing to obtain and examine in camera all the materials under subpoena and create a record adequate to review its ruling. (*Ibid.*)

Thus, the juvenile court clearly must provide a record for us to review by identifying the documents from the juvenile case file it reviewed in camera and, if it decides to withhold any of the documents based on a finding of detriment to a connected child, it must identify the withheld documents while maintaining confidentiality.

We ordered the juvenile court to provide us with the documents it reviewed, under seal. In response, we received only the documents filed with respect to the petition, including Therolf's petition, objections filed by the department and Mariah's adoptive parents, the juvenile court's orders on forms JV-573 and JV-574, and the writ petition and other documents filed in this court. From what we were provided, it is apparent that none of the procedures cited above occurred here. It appears the juvenile court did not review any documents from Mariah's juvenile case file, presumably because the department did not provide the court with any of those documents. While the department asserts substantial evidence supports the juvenile court's finding that release of the juvenile case file would be detrimental to a connected child, the juvenile court could not have made that finding without reviewing the actual juvenile case file—it cannot make that finding in the abstract. Accordingly, there is no evidence to support the juvenile court's denial of the petition and the juvenile court erred in failing to comply with

32.

*Elijah S.*, denying the petition without reviewing the documents that comprise the juvenile case file, and in failing to follow the procedures set out in *Pack*.

### D.     The Errors Were Prejudicial

As we have explained, the juvenile court committed several errors in denying the petition by not allowing Therolf to file a reply brief, not holding a hearing, finding detriment without reviewing the documents that comprise Mariah's juvenile case file consistent with *Elijah S.*, and failing to preserve a reviewable record in accordance with *Pack*.  Even where a juvenile court has erred, however, we will reverse only if the error was prejudicial, i.e., "'"'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'"'"  (*In re Adam H.* (2019) 43 Cal.App.5th 27, 32, quoting *In re Abram L.* (2013) 219 Cal.App.4th 452, 463.)

It was patently prejudicial not to follow *Elijah S.* and require the department to provide Mariah's juvenile case file consistent with that opinion, as these failures may have deprived Therolf of documents to which he is entitled.  The juvenile court's failure to preserve a record adequate for any meaningful review also was prejudicial.  Given these errors, we cannot say the failure to hold a hearing, at which these matters would have been fleshed out, was harmless.  If a hearing had been held, we would have had the benefit of what the juvenile court considered and some understanding of its order and reasoning.  Instead, we are left with the juvenile court's decision to withhold documents based on detriment to a connected child without any documents to support that decision, resulting in a wholly inadequate record to review the juvenile court's detriment finding.

Accordingly, we will vacate the juvenile court's orders and remand the matter to the juvenile court to (1) order the department to produce Mariah's juvenile case file in accordance with *Elijah S.* at a subsequently held hearing, (2) review the juvenile case file in camera to determine whether, after redacting information that is solely about any connected child, it can find, by a preponderance of the evidence, that release of the remaining information would be detrimental to a connected child's safety, protection, or

physical or emotional well-being, and (3) make a reviewable record by preserving the in camera record for appellate review.  In conducting its review, the juvenile court must apply the appropriate standards, namely, that there is a presumption in favor of release of a deceased child's documents unless the statutory reasons for confidentiality are shown to exist, and the only interests that may be weighed or balanced are those of a child. (§ 827(a)(2)(B) & (a)(2)(C).)

## DISPOSITION

We grant Therolf's petition.  Let a peremptory writ of mandate issue directing the juvenile court to vacate its September 23, 2021, orders issued on forms JV-573 and JV-574, and to hold a hearing to reconsider Therolf's request for disclosure of Mariah's juvenile case files after ordering the department to produce the case files in accordance with *Elijah S.* and reviewing the responsive documents in camera consistent with this opinion.  Therolf shall recover his costs incurred in this proceeding.


MEEHAN, J.

I CONCUR:


LEVY, Acting P. J.

34.

POOCHIGIAN, J., Concurring.

I concur with the majority's holding that a writ should issue since the court erred in failing to hold a hearing.  (See Welf. & Inst., § 827, subd. (a)(2)(F).)[1]  However, I write separately to express doubt regarding the interpretation of section 827, subdivision (a)(2)(A) set forth in *In re Elijah S.* (2005) 125 Cal.App.4th 1532, 1543 (*Elijah S.*).

*Statutory Interpretation*

*Elijah S.* reads the phrase "within the jurisdiction of the juvenile court pursuant to Section 300" (§ 827, subd. (a)(2)(A)) to include any child described by section 300, regardless of whether a dependency court had "taken jurisdiction" over the child or not. There are several problems with this reading.

The word "jurisdiction" in the dependency context is most often used in connection with the well-known and integral part of the dependency process known as "taking jurisdiction" over a child at the "jurisdictional hearing."  (See *In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129; see also § 355, subd. (a).)  Specifically, the juvenile court "takes jurisdiction over the child" by making a factual finding that the child is described by section 300.  (*In re Austin P.*, *supra*, at p. 1129; see §§ 355, subd. (a); 356.) Thus, under its most natural reading in the dependency context, subdivision (a)(2)(A)'s phrase "child who was within the jurisdiction of the juvenile court pursuant to Section 300" (§ 827, subd. (a)(2)(A)) means a child over whom the juvenile court had taken jurisdiction by finding them to be a person described by section 300.  In other words, a child as to whom jurisdictional findings (§ 356) had been affirmatively made.

Indeed, references to the "jurisdiction" of the juvenile court often mean the formal, active jurisdiction of the juvenile court during a dependency case.  (See §§ 366,

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

subd. (a)(1)(D) & (F)(i); 366.1, subds. (g)(1), (h); 391, subd. (b)(5)(B); see also § 391, subd. (d)(2); but see, e.g., § 301, subd. (a).) If the Legislature had intended section 827, subdivision (a)(2)(A) to have the meaning *Elijah S.* ascribes to it, the use of the phrase "within the jurisdiction of the juvenile court" risks confusion in light of the way "jurisdiction" is typically used in the dependency context.

Not only would this risk of confusion have been substantial, it would have been unnecessary. If the Legislature had meant to refer to any child who happened to be described by section 300, regardless of whether they had ever been under the active jurisdiction of a juvenile court, it had a far better phrase to use: a "child described by section 300." Indeed, this and similar phrasing is found throughout the dependency statutes. (See, e.g., §§ 305, subd. (a); 328; 340, subd. (b)(1).)

Additionally, section 827, subdivision (a)(2)(A) itself seems to presuppose that a petition to release records will be tied to a specific juvenile case. The last sentence of the provision reads: "Except as provided in this paragraph, the presiding judge of the juvenile court may issue an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing by a preponderance of evidence that release of the juvenile case file or any portion thereof is detrimental to the safety, protection, or physical or emotional well-being of another child who is directly or indirectly connected to *the juvenile case that is the subject of the petition*." (§ 827, subd. (a)(2)(A), italics added.) If subdivision (a)(2)(A) encompasses records of deceased children who were never the subject of a dependency case, it is unclear what the phrase "the juvenile case that is the subject of the petition" refers to. Yet, if subdivision (a)(2)(A) refers only to deceased children over whom the juvenile court had taken jurisdiction in a dependency case, the meaning of that phrase is clear.

*Legislative Acquiescence*

Petitioner emphasizes that section 827 has been amended since *Elijah S.* was decided, yet no alterations were made to the wording about a deceased child who was "within the jurisdiction

2.

of the juvenile court." And, indeed, it is clear the Legislature was aware of the *Elijah S.* decision, because legislative analyses for the subsequent amendments reference the case and its holding.

However, the concept of legislative acquiescence has fallen into disfavor because it rests upon faulty assumptions. (See Brown, *Tradition and Insight* (1993) 103 Yale L.J. 177, 199–200.) Courts have concluded that "legislative acquiescence is an exceedingly poor indicator of legislative intent." (*Donajkowski v. Alpena Power Co.* (1999) 460 Mich. 243, 258.) Our Supreme Court has repeatedly observed, including quite recently, that legislative acquiescence arguments "rarely do much to persuade." (*Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 116; *Scher v. Burke* (2017) 3 Cal.5th 136, 147.)

There are several reasons for this. First and foremost, statutory interpretation centers on the *enacting* legislature's intent. The inaction of a *subsequent* legislature does not speak to that intent.

Moreover, while the subsequent legislature's inaction could be the result of acquiescence in the status quo, it could just as likely be the result of disagreement on how to alter the status quo, indifference to the status quo, or a failure to appreciate or focus on the consequences of not changing the status quo in a bill addressing other issues. Consequently, it is impossible to assert with any degree of assurance that the Legislature's inaction represents its affirmative approval of an appellate court's statutory interpretation. (See *Patterson v. McLean Credit Union* (1989) 491 U.S. 164, 175, fn. 1 (*McLean*) superseded by statute as noted in *CBOCS West, Inc. v. Humphries* (2008) 553 U.S. 442, 450, 454.)

Additionally, even if a majority of legislators had subsequently come to personally approve of a judicial interpretation contrary to the enacting legislature's intent, that approval can only have legal effect upon the passage of a law implementing it. (Cal. Const., art. IV, § 8(b)(1).) Legislative silence is no substitute for a bicameral vote upon the text of a law. (*McLean*, *supra*, 491 U.S. at p. 175, fn 1; see Cal. Const., art. IV, § 8(b)(1); see also *Thompson v. Thompson* (1988) 484 U.S. 174, 191–192 (conc. opn. of Scalia, J.).)

3.

Finally, even if a subsequent legislature's understanding of the legal status quo were pertinent, that conclusion would not inure solely to petitioner's benefit here. Senate Bill No. 39, which enacted the 2007 amendments underlying petitioner's argument, observed that subdivision (a)(2) reflects the Legislature's conclusion "that when *a dependent child* dies within the jurisdiction of the juvenile court, the presumption of confidentiality for juvenile case files evaporates and the requirement of an expedited decision becomes manifest.…"[2] (Sen. Bill No. 39, § 1(f), italics added.) (2007–2008 Reg. Sess.) (Senate Bill 39.) Unlike the references to *Elijah S.* which appear solely in legislative history documents, this description of subdivision (a)(2) as addressing dependent children was part of a finding actually enacted by the Legislature in Senate Bill 39.

*Practical Considerations*

When a court determines whether to take jurisdiction (i.e., whether the child is a person described by § 300), it usually does so after a contested evidentiary hearing with well-developed rules of evidence. (§ 355.) Under *Elijah S.*, in order for a court to determine whether a deceased child for whom there were no prior jurisdictional findings qualifies as a "child who was within the jurisdiction of the juvenile court pursuant to

---

[2] A court can make jurisdictional findings and dispositional orders at the same hearing. (§ 358, subd. (a).) In that circumstance, the child can be taken under the jurisdiction of the juvenile court and become a dependent on the same day. This is likely why Senate Bill 39 section 1(f) refers to "a dependent child" while subdivision (a)(2) refers to a child "within the jurisdiction of the juvenile court."

However, it is true that a "dependent child" and a child over whom the court has taken "jurisdiction" are not always synonymous. Because while the juvenile court *can* address disposition at the same time as jurisdictional findings (§ 358, subd. (a)), the disposition hearing can also be continued 10 to 30 days from the jurisdiction hearing. (§ 358, subd. (a)(1)–(3).) In practice, the delays are often longer.

During the gap between jurisdictional findings and dispositional orders, the court has taken jurisdiction over the child, but the child is not yet "a dependent child." Given the very short statutory timeframe that a child would be under the jurisdiction of the court, yet not a dependent of the court, and given that there is no shorthand way to refer to such children, Senate Bill 39's use of the phrase "dependent child" is unsurprising. Moreover, whatever mild friction there is between my reading of subdivision (a)(2) and Senate Bill 39's reference to "dependent child[ren]," it pales in comparison to its incompatibility with *Elijah S.*'s interpretation.

Section 300," (§ 827, subd. (a)(2)(A)), it would often – if not always – be necessary to conduct a factfinding inquiry similar to the one performed at a jurisdictional hearing.

*Legislative Policy*

*Elijah S.* held the Legislature "was interested in opening up to public view the workings of the entire juvenile court and child protective system for the purpose of exposing deficiencies therein, and thereby enabling their correction." (*Elijah S.*, *supra*, 125 Cal.App.4th at p. 1555; see maj. opn at p. 26, *ante*.) The opinion concluded that this legislative purpose "would not be advanced by limiting disclosure of juvenile records to only those generated and maintained by the juvenile court *after* a minor had already been declared a dependent." (*Id.* at p. 1556.)

This type of reasoning, once widely employed, has also been rejected due to its faulty assumptions. " '[N]o legislation pursues its purposes at all costs.' " (*CTS Corp. v. Waldburger* (2014) 573 U.S. 1, 12; *American Exp. Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 234; *Rodriguez v. United States* (1987) 480 U.S. 522, 525–526; *City of Selma v. Fresno County Local Agency Formation Com.* (2016) 1 Cal.App.5th 573, 584; *County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 48.) Accordingly, courts have roundly rejected the approach of assuming that "*whatever* furthers the statute's primary objective must be the law." (*Cyan, Inc. v. Beaver County Employees Retirement Fund* (2018) ___ U.S. ___ [138 S.Ct. 1061, 1073].) That is because "statutes have stopping points as well as general objectives, and how far to go in pursuit of those objectives is integral to the legislative choice." (*N.L.R.B. v. HH3 Trucking, Inc.* (7th Cir. 2014) 755 F.3d 468, 471.) In other words, "the textual limitations upon a law's scope are no less a part of its 'purpose' than its substantive authorizations." (*Rapanos v. United States* (2006) 547 U.S. 715, 752.)

Here, as in many areas of legislative activity, there are various goals being balanced against one another. "Opening up the workings of the child welfare system" is certainly one of those goals, but only to a certain extent. On the other hand, it remains

5.

the case that juvenile court records, in general, should be kept confidential.  (§ 827, subd. (b)(1).)

Similarly, Senate Bill 39 itself embodied dual legislative intents that needed to be balanced against one another.  With that enactment, the Legislature expressly intended "to maximize public access to juvenile case files in cases where a child fatality occurs as a result of child abuse or neglect … *while also* ensuring that basic privacy protections are consistently afforded."  (Sen. Bill 39, § 1(e), italics added.)  (2007–2008 Reg. Sess.)

It is not for us to decide how far to pursue public access at the expense of privacy protections.  We must avoid the presumption that whatever statutory interpretation furthers public access must be the law, regardless of how it affects privacy interests or other competing policies.  Instead, we must adhere to the statutory text itself to identify where the Legislature chose to stop in its pursuit of the statute's "general objectives." (*N.L.R.B. v. HH3 Trucking, Inc.*, *supra*, 755 F.3d at p. 471.)  Put simply, the Legislature wrote the statute it wrote – "meaning, a statute going so far and no further."  (*Michigan v. Bay Mills Indian Community* (2014) 572 U.S. 782, 794.)

It is important to note that a straightforward reading of section 827, subdivision (a)(2)(A) would not eliminate the ability of journalists to investigate or expose possible lapses or misconduct by social services agencies, foster parents, or others, in connection with the death of children.  Section 10850.4 independently requires, without court order, the release of redacted documents concerning children who die under "a reasonable suspicion that the fatality was caused by abuse or neglect."  (§ 10850.4, subd. (a).)

Even if section 10850.4 were not enough, section 827, subdivision (a)(2)(A) merely sets forth a *presumption* in favor of release for certain records.  (§ 827, subd. (a)(2)(B).)  The juvenile court may still release records not covered by section 827, subdivision (a)(2)(A).  (§ 827, subd. (a)(1)(Q); Cal. Rules of Court, rule 5.552(d).)  While there is no presumption in favor of release for such records, the court may still order

release after it "engage[s] in a careful balancing of … competing interests," including those of the child, parties, *petitioner, and the public.* (*J.E. v. Superior Court* (2014) 223 Cal.App.4th 1329, 1337–1338.)

It seems eminently reasonable to establish a presumption in favor of the release of documents pertaining to children who die while under the active jurisdiction/supervision of a government system designed to protect children. It also seems reasonable to decline to extend that presumption to records regarding other children, while still allowing for their release after a balancing of interests, including those of the petitioner and the public.

While I do not endorse *Elijah S.*'s reading of section 827, subdivision (a)(2)(A), I respectfully concur with the majority as to the issuance of a writ directing the juvenile court to vacate its prior ruling and to hold a hearing.

POOCHIGIAN, J.